UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TAMIKA LATOYA BASSETT, | Civil Action No.: 16-13076<br>Honorable Sean F. Cox<br>Magistrate Judge Elizabeth A. Stafford |
| Plaintiff, | |
| v. | |
| NANCY A. BERRYHILL,<br>ACTING COMMISSIONER<br>OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 21]

Plaintiff Tamika Bassett appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 21] be **GRANTED**;

- Bassett's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

A. **Bassett's Background and Disability Applications**

Born July 26, 1976, Bassett was 36 years old at the time of her alleged onset date of March 26, 2013. [ECF No. 11-5, Tr. 119]. She submitted her application for disability benefits in June 2013 and was insured for DIB purposes through December 31, 2017. [ECF No. 11-2, Tr. 15; ECF No. 11-5, Tr. 119]. Bassett has completed one year of college, and previous work as a pharmacy tech and beauty clerk. [ECF No. 11-6, Tr. 151-52]. She claimed to be disabled by herniated discs in her back, arthritis, an ankle issue, depression, panic attacks, and anxiety. [ECF No. 11-6, Tr. 151].

After the Commissioner denied her disability application initially, Bassett requested a hearing, which took place in March 2015, during which she and a vocational expert (VE) testified. [R. 11-2, Tr. 29-56]. In a July 15, 2013, written decision, the ALJ found Bassett to be not disabled. [*Id.*, Tr. 13]. The Appeals Council denied review, making the ALJ's decision the

final decision of the Commissioner, and Bassett timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB is available for those who have a "disability." See *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Bassett was not disabled. At the first step, she found that she had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 15]. At the second step, the ALJ found that Bassett had the severe impairments of "degenerative disc disease, left ankle arteriovenous malformation, arthritis, fibromyalgia, and obesity." [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 17].

Between the third and fourth steps, the ALJ found that Bassett had the RFC to:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for 6 hours and sit for 6 hours, each, in an 8-hour workday. She requires a sit/stand option that allows her to change positions at will, but it will not require her to be off

4

> task for more than 10 percent of the workday. She can frequently push/pull with her left lower extremity. She can frequently balance. She can occasionally climb ramps/stairs, ladders, ropes, scaffolds, stoop, kneel, crouch, and crawl. She should avoid exposure to heights, moving mechanical parts, and operating motor vehicles.

[*Id.*, Tr. 17-18]. At step four, the ALJ found that Bassett was unable to perform any past relevant work. [*Id.*, Tr. 22-23]. With the assistance of VE testimony, she determined at step five that Bassett could perform occupations such as machine tender, line attendant, and packager, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 24].

## II.  ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

5

whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Bassett argues that the ALJ violated the treating physician rule, and that the RFC was internally inconsistent and failed to account for her manipulative limitations, disabling pain, and the time she will necessarily miss work due to her impairments.  The Court disagrees and recommends that the ALJ's decision be affirmed.

## A.

Bassett contends that the ALJ erred by failing to accord controlling weight to restrictions assessed by vascular surgeon Brian Beeman, M.D. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43.  An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

6

weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

Dr. Beeman examined Bassett only once, in August 2013. [ECF No. 11-7, Tr. 373-75]. At that time, Bassett complained of pain in the left foot and ankle when standing or walking, as well as tingling in her toes on the left foot. [*Id.*, Tr. 373]. The review of systems noted no muscle or joint pain, weakness, swelling, or inflammation, and no restriction of motion. [*Id.*, Tr. 374]. Physical examination revealed swelling around the left medial ankle, but otherwise normal results. [*Id.*, Tr. 375]. Dr. Beeman diagnosed foot pain and "AVM (arteriovenous malformation) of the left ankle.)" [*Id.*]. Bassett was "instructed to elevate the legs as much as possible" and to "avoid sitting or standing for prolonged periods of time and exercise frequently. She should wear the compression stockings when not active or elevating the legs." [*Id.*]. Bassett's current treatment plan was continued with no changes. [*Id.*].

The ALJ described Dr. Beeman's report, but did not identify it as opinion evidence or treat it as such. [ECF No. 11-2, Tr. 20, 22]. This was not error; Dr. Beeman was not a "treating physician" because he treated Bassett only once. "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical

7

practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship.").

Nor was Dr. Beeman's opinion a "medical opinion" to which an ALJ was required to defer. A medical opinion must reflect "judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Dr. Beeman gave no opinion as to Bassett's limitations or the extent to which she is able to function despite her impairments. Instead, he instructed her to elevate her legs "as much as possible" and to avoid sitting or standing "for prolonged periods," without providing specific lengths of time. [ECF No. 11-7, Tr. 375]. And these instructions do not even conflict with the ALJ's assessed RFC requiring that she have "a sit/stand option that allows her to change positions at will." [ECF No. 11-2, Tr. 17]. So Bassett's argument that the ALJ erred by rejecting Dr. Beeman's restrictions is wholly without merit.

8

Bassett also complains about the weight afforded to the opinion of Danielle Duncan, M.D., but for similar reasons, her objections fall short. Dr. Duncan also saw Bassett only once, in June 2013, when she reviewed Bassett's left ankle MRI showing an enhancing mass likely representing a low flow vascular malformation. [ECF No. 11-7, Tr. 226]. She found that Bassett ambulated without support, but with a mild limp, and that her ankle was tender to palpation and moved with pain. [*Id.*]. However, she offered no medical opinion except one letter addressed "to whom it may concern" stating that Bassett is "to remain off work until her referral visit with Dr. Bays." [*Id.*, Tr. 245]. This does not constitute a medical opinion as defined by § 404.1527(a)(1), and to the extent that Dr. Duncan was opining that Bassett was disabled, that is an issue reserved solely for the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 F.App'x 336, 340 (6th Cir. 2008).

The ALJ furthermore noted that Bassett had reported her left ankle vascular malformation as being "a birth defect and nothing to be concerned about," [ECF No. 11-2, Tr. 21, citing ECF No. 11-7, Tr. 349], and that the record is replete with findings of normal gait and station, normal extremity strength bilaterally, normal joint findings, and normal musculoskeletal findings. [ECF No. 11-2, Tr. 21-22, citing ECF No. 11-7, Tr. 299-300, 306,

9

309, 312, 316, 320-21, 354-55, 357, 360, 366, 407-08, 412-13, 417, 421, 428, 437, 442-43, 448].

For these reasons, Bassett's complaint that the ALJ erred by failing to give controlling weight to treating physicians' opinions is without merit.

**B.**

Bassett's remaining challenges relate to the sufficiency of the assessed RFC. She bears the burden of proving that she requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110. In an effort to meet that burden, Bassett first contends that the RFC is internally inconsistent in that it requires her able to stand and/or walk for six hours and sit for six hours throughout the day, but also requires a sit/stand option so that she can change positions at will. [ECF No. 11-2, Tr. 17]. She reasons that "[i]f she needs to be seated for half or more of the day, this would render it impossible for her to be on her feet for 6 hours of an 8 hour day as set forth by the ALJ." [ECF No. 16, PageID 510]. However, the correct reading of the RFC is that the sit/stand option is a restriction on Bassett's ability to otherwise sit or stand and walk for six hours. This is made clear by the hypothetical question posed to the VE at the hearing, in which the ALJ

posited a claimant "limited to an exertional level of light[2] but would require a sit stand option at will." [ECF No. 11-2, Tr. 50]. As the Commissioner states, Bassett needing to sit for half of a particular workday "would in no way run afoul of the ALJ's RFC finding." [ECF No. 21, PageID 543].

Bassett also contends that the ALJ did not properly incorporate restrictions regarding her hands, pain, and time she will miss from work into the RFC. But she has failed to sustain her burden to prove that her impairments require a more restrictive RFC that would be disabling.

As to her hands, Basset cites to the records of Carlos Diola, M.D., a rheumatologist who examined her on a number of occasions. Dr. Diola first saw Bassett in June 2013, noting "mild puffiness and diffuse tenderness of the MCP and PIP joints." [ECF No. 11-7, Tr. 258-60]. He also found her shoulder joints to have "slow but full forward arm raising, rotations, and abduction," and "tender medial joint lines" of the knees. [*Id.*, Tr. 259]. She did not meet the criteria for fibromyalgia syndrome, as less than eleven tender points were noted. [*Id.*].

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

11

Between then and December 2014, Dr. Diola's findings remained largely the same, though she was twice found to have more than eleven tender points and was assessed with fibromyalgia. [*Id.*, Tr. 336-40]. He was also suspicious of carpal tunnel syndrome and noted a negative Tinel's test but a positive left Phalen's test. [*Id.*, Tr. 338-40]. But as the Commissioner notes, neither Dr. Diola nor any other physician ever offered an opinion as to Bassett's functional abilities or limitations. [ECF No. 21, PageID 544-47]. "If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

The only opinion of record is that of Robert Nelson, M.D., a state agency consultant who opined in August 2013 that Bassett had no manipulative limitations. [ECF No. 11-3, Tr. 63]. State agency consultants like Dr. Nelson are "highly qualified ... experts in the evaluation of the medical issues in disability claims under the Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2 (July 2, 1996). The ALJ gave Dr. Nelson's opinion the greatest weight when assessing Bassett's RFC, finding it to be

consistent with the record. [ECF No. 11-2, Tr. 22]. Bassett presents no evidence that this was error. And even if it were error, it would be harmless because the ALJ asked the VE if jobs would remain available to a hypothetical claimant with Bassett's RFC if it was also restricted to occasional handling and fingering, and the VE identified two jobs that would still be available to the claimant. [*Id.*, Tr. 50-51].

Bassett also fails to sustain her burden of showing that the ALJ was required to include in the RFC that she would need days off of work because of her pain. She cites to the records of Naman Salibi, M.D., who first saw Bassett in May 2013. [ECF No. 11-7, Tr. 253-56]. Dr. Salibi reviewed her MRI results, which showed L4-L5 disc protrusion with facet hypertrophy and impingement on the left adjacent foramen and exiting nerve root. [*Id.*, Tr. 255]. She assessed chronic low back pain with bilateral posterior and anterior thigh and left leg pain down to the calf, and right thigh pain down to the knee. [*Id.*]. The MRI results correlated with the left leg pain, but did not explain the chronicity of her symptoms, or her right lower leg symptoms. [*Id.*]. Dr. Salibi recommended a CT scan of the lumbar spine, flexion/extension views of the lumbosacral spine, an epidural injection series, physical therapy two to three times per week for four weeks after the injections, and follow up after completion. [*Id.*, Tr. 256].

In July 2013, Dr. Salibi noted slightly positive straight leg raising results on the left, and negative testing on the right, with other findings similar to the prior visit. [*Id.*, Tr. 347-48]. Her plan was to continue conservative management for the time being, and to complete the epidural steroid injections. [*Id.*]. In August, Bassett had negative straight leg raising results bilaterally, and had responded well to the epidural steroid injections, but in October the benefits from the injections were not lasting and she again tested positive on the left for straight leg raising. [*Id.*, Tr. 349-52]. Dr. Salibi recommended that Bassett's pain management be handled by her primary care physician, and to continue with conservative management for her lower back pain and follow up in two months. [*Id.*, Tr. 352].

In March 2014, Dr. Salibi noted that Bassett's back and left leg pain had decreased after she lost weight. [*Id.*, Tr. 353-55]. Her examination results were normal, and her impressions were unchanged except for the decrease in pain. [*Id.*]. She saw Bassett again in June, with similar results, and her CT scan showed a L4-L5 disc bulge and left paracentral disc protrusion. [*Id.*, Tr. 356-58]. The impression was unchanged from March. [*Id.*, Tr. 358]. Dr. Salibi saw her in August 2014, October 2014, December 2014, and January 2015, with essentially unchanged results, although Bassett had a positive straight leg raising test on the left in December and

14

was bilaterally negative for straight leg raising in January. [*Id.*, Tr. 359-71]. As of January 2015, Bassett preferred "to continue conservative management and live with her symptoms [rather] than operate on her back at this time." [*Id.*, Tr. 370].

The ALJ noted the evidence from Dr. Salibi, as well as largely normal results from Bassett's treatment with her primary care physician Gary Brooks, M.D., in assessing the physical RFC. [ECF No. 11-2, Tr. 21-22]. She also noted that Dr. Brooks recommended Bassett remain off of work for four weeks in June 2013. [*Id.*, Tr. 19, citing ECF No. 11-7, Tr. 301]. Bassett faults the ALJ for not also considering her "subsequent off work statements" from Dr. Salibi and Dr. Duncan. [*See id.*, Tr. 245, 348]. But as discussed above, those statements were not medical opinions, and they related to an issue reserved solely for the Commissioner. And even if this evidence could properly be read to support a finding that Bassett would require days off, that is not a good enough reason to overturn the ALJ's decision. "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (citations and internal quotation marks omitted).

15

Here, the ALJ's RFC assessment was supported by substantial evidence because Dr. Nelson provided the only medical opinion of Bassett's RFC in the record, finding that she could "perform light work with frequent balancing, occasional climbing of ramps/stairs, ropes, ladders, [and] scaffolds," as well as occasional "stooping, kneeling, crouching, and crawling." [ECF No. 11-2, Tr. 22, citing ECF No. 11-3, Tr. 63-64]. The ALJ relied on this opinion, but added more restrictions. [*Id.*, Tr. 17-18, 22]. Where, as here, the ALJ relied upon a state agency's RFC opinion and the plaintiff has provided no medical opinion with contrary restriction, overturning the ALJ's decision is not warranted. *Hibbard v. Astrue*, 537 F. Supp. 2d 867, 874 (E.D. Ky. 2008).

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 21] be **GRANTED**; that Bassett's motion [ECF No. 16] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: August 11, 2017 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 11, 2017.

                                      s/Marlena Williams
                                      MARLENA WILLIAMS
                                      Case Manager